**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **v.** | |
| **NELSON RODRIGUEZ** | **NOS.  11-251-01 and 12-486** |

**DuBois, J.**                                                    **February 12, 2021**

### M E M O R A N D U M

### I.      INTRODUCTION

Presently before the Court are defendant Nelson Rodriguez's *Pro Se* Motion under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

("§ 2255 Motion") and *Pro Se* Emergency Motion Pursuant to the Cares Act under 18 U.S.C.

§ 3582(c)(1)(A)(i) for Compassionate Release Due to the Outbreak of COVID-19 ("*Pro Se*

Motion"), amended by the counseled Defendant's Motion to Reduce Sentence Pursuant to 18

U.S.C. § 3582(c)(1)(A)(i) ("Counseled Motion"), and related supplements (with the *Pro Se*

Motion and Counseled Motion, "Motion for Compassionate Release").[1]  For the reasons that

follow, the Motions are denied.

---

[1] In addition to the *Pro Se* Motion and the Counseled Motion, defendant also filed Emergency Motion to Amend (Defendant's First Supplement); Defendant's Successive Emergency Motion for Compassionate Release, Pursuant to Title 18, United States Code, Section 3582(c)(1)(A) ("First Step Act"), and for the Appointment of CJA Counsel, Pursuant to 18 U.S.C. § 3006A ("Defendant's Second Supplement"); Defendant's Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Defendant's Third Supplement"); Defendant's Declaration in Support of Emergency Motion for Compassionate Release, Brought Pursuant to 18 U.S.C. [§] 3582(c)(1)(A) I (Defendant's Fourth Supplement"); Defendant's Letter Re: Emergency Motion – Compassionate Release ("Defendant's Fifth Supplement"); Defendant's Declaration in Support of Emergency Motion for Compassionate Release, Brought Pursuant to 18 U.S.C. [§] 3582(c)(1)(A) II ("Defendant's Sixth Supplement"); Defendant's Update/Notice of Worsening Conditions at FCI Fort Dix and Need for Immediate Action to Protect Human Lives ("Defendant's Seventh Supplement"); and Defendant's Reply to Government's January 17, 2021 Response ("Defendant's Eighth Supplement").  The Court considers these filings as well.  *See* Order, *United States v. Rodriguez* (E.D. Pa. Nov. 19, 2020) (Document No. 727); Order, *Rodriguez* (E.D. Pa. Dec. 2, 2020) (Document No. 732); Order, *Rodriguez* (E.D. Pa. Jan. 6, 2021) (Document No. 740).

## II.    BACKGROUND

### A.  Defendant's Criminal Conviction

On October 17, 2012, defendant pled guilty to a nine-count indictment charging drug, weapons, and money laundering offenses committed in his role as a leader of a cocaine trafficking ring.[2]  Gov't's Resp. § 2255 Mot. 1.  Pursuant to a plea agreement, defendant "pled guilty to distribute five kilograms or more of cocaine, and marijuana, in violation of 21 U.S.C. § 846 (Count One); possession with intent to deliver five kilograms or more of cocaine within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count Two); distribution of 500 grams or more of cocaine within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count Three); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four); felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Five); maintaining a drug house and aiding and abetting, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count Six); and money laundering, in violation of 18 U.S.C. § 1956(a)(1) (Counts Seven through Nine)."  Gov't's Resp. § 2255 Mot. 2.

Count Five, 18 U.S.C. § 922(g)(1), is at issue in defendant's § 2255 Motion.  That charge was grounded on two loaded firearms that the Government recovered on the date of defendant's arrest.  Gov't's Resp. § 2255 Mot. 2-3.  The elements of a § 922(g) charge at that time were: (1) defendant knowingly possessed a firearm; (2) defendant was a member of a class of persons prohibited from possessing firearms; and (3) the firearm was involved in interstate commerce. 18 U.S.C. § 922(g)(1); Gov't's Change of Plea Mem. 6.

---

[2] Defendant was initially charged in Criminal Action No. 11-251 and subsequently charged in Criminal Action No. 12-486.  His guilty plea was entered in Criminal Action No. 12-486 and resolved both cases.  Gov't's Resp. § 2255 Mot. 1.

The Government filed an Information pursuant to 21 U.S.C. § 851 charging a prior felony

drug offense—manufacturing, delivering, or possessing with intent to manufacture or deliver a

controlled substance on January 5, 1989, in violation of 35 Pa. Stat. Ann. § 780-113(a)(30).

Information Charging Prior Offense ¶ 1.  The Presentence Report states that defendant pled

guilty to this charge and was sentenced to, *inter alia*, a term of four to eight years imprisonment

on January 17, 1991.  Presentence Report ("PSR") ¶ 66.  He was paroled on January 9, 1995,

after serving approximately four years in prison.  *Id.* at ¶ 66.  The Plea Agreement includes

reference to the statutory maximum and mandatory minimum sentences for defendant's current

offenses as enhanced by the Information charging one prior felony drug conviction.[3]  Plea

Agreement ¶ 5.

On November 24, 2014, the Court sentenced defendant to, *inter alia*, 198 months'

imprisonment—concurrent terms of imprisonment of 168 months on Counts One, Two, Three,

Six, Seven, Eight, and Nine and 150 months on Count Five, and a consecutive term of

imprisonment of 30 months on Count Four.  Gov't's Resp. § 2255 Mot. 3.  Defendant did not

appeal his sentence.  Def.'s § 2255 Mot. 2.  He is currently serving his sentence at Federal

Correctional Institute Fort Dix at Fort Dix, New Jersey ("FCI-Fort Dix").  Gov't's Resp. § 2255

Mot. 3.  The Government reports his estimated release date is April 18, 2025.  *Id.*

### B.  The *Rehaif* Decision

On June 21, 2019, the Supreme Court ruled in *Rehaif v. United States* that a conviction

under § 922(g) requires the Government to "show that the defendant knew he possessed a

---

[3] Defendant was convicted of a second prior drug offense— manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance and related crimes in the Court of Common Pleas of Philadelphia County on March 5, 1991.  PSR ¶ 65.  On that date, he was sentenced, inter alia, to six to twenty-five months' imprisonment and three years' probation.  *Id.* at ¶ 65.  The Government did not identify the second prior felony drug conviction in the Information under 21 U.S.C. § 851.  Plea Agreement ¶ 3; Gov't's Resp. § 2255 Mot. 2.

firearm *and also that he knew he had the relevant status* when he possessed it."  139 S. Ct. 2191, 2194 (2019) (emphasis added).  Under *Rehaif*, the defendant must know he is a member of the class, not that the class was prohibited from possessing firearms.  That means that, to obtain a conviction under § 922(g)(1) at present, the Government must prove a defendant knew he had been convicted of a crime punishable by a term of imprisonment for a term exceeding one year.

The *Rehaif* requirement that a defendant know he was a convicted felon was not an element of a § 922(g)(1) charge at the time defendant pled guilty.  As a consequence, neither the Government's plea memorandum nor the plea agreement mention defendant's knowledge of his status as a person who had been convicted of "a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Gov't's Change of Plea Mem. 6; Plea Agreement ¶ 1.

### C.  The COVID-19 Pandemic

Defendant filed his Motion for Compassionate Release amid the global COVID-19 pandemic.[4]  He cites three diagnosed health conditions that he asserts put him at an increased risk of suffering severe consequences from COVID-19—diabetes, hypertension, and high body mass index.  Counseled Mot. 9.  Defendant, who is fifty-eight years old, also claims that he suffers from "chronic pain in his shoulder, glaucoma, and continuing problems with his eyes which have required surgery in the past."  *Id.*

While defendant's Motion for Compassionate Release was pending, FCI-Fort Dix experienced a "huge outbreak" of COVID-19 in which "over half of the inmate population"

---

[4] Defendant filed requests for compassionate release with the warden of FCI-Fort Dix on May 15, 2020 and August 13, 2020.  Counseled Mot. 2; Gov't's Resp. Mot. Compassionate Release 4.

contracted COVID-19.  Gov't Fourth Supp 2;[5] Def.'s Third Supp. 3.  Defendant contracted

COVID-19 during this time.  Def.'s Second Supp. 2.  The Government reports that, as of

December 3, 2020, the Bureau of Prisons "deems [defendant] recovered from COVID-19

without adverse effects" and that all inmates in defendant's unit "are also deemed recovered."

Gov't Third Supp. 1.  The Government also states it "is hopeful that the institution is turning

the corner, as the number of inmates deemed recovered is now soaring in relation to the number

of current positive cases."  Gov't Fourth Supp. 2.

### D.  Procedural History

Defendant filed the *Pro Se* Motion for Compassionate Release on May 13, 2020.  On

May 20, 2020, defendant filed his First Supplement.  The Court referred the Motion and First

Supplement to the Federal Community Defender Office for the Eastern District of Pennsylvania

to determine whether it would seek appointment to represent defendant for the purpose of

litigating his Motion for Compassionate Release.  Order, *Rodriguez* (E.D. Pa. June 11, 2020)

(Document No. 680); Order, *Rodriguez*, (E.D. Pa. June 12, 2020) (Document No. 682). In

response, the Federal Community Defender sought appointment, which was granted.  Order,

*Rodriguez*, (E.D. Pa. June 30, 2020) (Document No. 688).  The Federal Community Defender

filed the Counseled Motion on behalf of defendant on August 24, 2020.  Thereafter, defendant

---

[5] At the Court's order, the Government has filed several Responses in opposition to defendant's Motion for
Compassionate Release.  *See* Government's Response in Opposition to Defendant's Motion to Reduce Sentence
Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), "Gov't Resp. Mot. Compassionate Release"); Government's Response
in Opposition to Defendant's Supplemental Motions for Compassionate Release ("Gov't First Supp.");
Government's Supplemental Response to Defendant's Supplemental Motions for Compassionate Release I
("Gov't Second Supp."); Government's Supplemental Response to Defendant's Supplemental Motions for
Compassionate Release II ("Gov't Third Supp."); Government's Fourth Supplemental Response in Opposition to
Defendant's Motions for Compassionate Release ("Gov't Fourth Supp.").

continued to supplement his Motion for Compassionate Release.[6]  The Government filed a Response to the Counseled Motion on September 8, 2020 and has continued to supplement its opposition to Defendant's Motion for Compassionate Release in response to defendant's supplements.

Defendant filed the *pro se* § 2255 Motion on June 22, 2020.  The Government responded on July 18, 2020, and defendant filed a *pro se* Reply on August 5, 2020.

The Motions are thus ripe for decision.

**III.    DISCUSSION**

**A.  Motion for Compassionate Release**

*i.      Applicable Law*

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with the prison warden.[7]  18 U.S.C. § 3582(c)(1)(A)(i).  Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met."  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401. (E.D. Pa. 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)).  "Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines,

---

[6] Defendant's Second Supplement, filed November 6, 2020, requests the Court appoint counsel to represent him. The Court granted the Federal Community Defender's Motion to Appoint the Federal Community Defender Office on June 30, 2020.  Order, *Rodriguez*, (E.D. Pa. June 30, 2020) (Document no. 688).  Accordingly, that part of Defendant's Second Supplement that seeks appointment of counsel is denied as moot.

[7] Because defendant filed requests for compassionate release with the warden of FCI-Fort Dix on May 15, 2020 and August 13, 2020, he has exhausted his administrative remedies.

which cites the (A) medical conditions, (B) age, and (C) family circumstances of the defendant and (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the BOP.  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  While courts have concluded that this policy statement is no longer binding after enactment of the First Step Act, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i). *United States v. Beck*, No. 13-cr-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Coleman v. United States*, No. CV 20-1769, 2020 WL 2079406, at *6 (E.D. Pa. Apr. 30, 2020) (DuBois, J.).

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020).  Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).  Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute.  *United States v. Ramirez-Ortega*, No. CR 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J.  However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19.  *Rodriguez*, 2020 WL 1627331, at *7.

However, "[n]ot every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-cr-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020).  Before granting compassionate release, a

court must consider (1) whether the defendant would present a danger to the community; and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a).  *Babbitt*, 2020 WL 6153608, at *9.  To determine whether a defendant would be a danger to the community, the Court considers "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g). Then, § 3553(a) instructs the court to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing."  *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)).  The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.

*Babbitt*, 2020 WL 6153608 at *10 (citing 18 U.S.C. § 3553(a)).  Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors.

ii.     *Analysis*

Defendant presents two arguments in support of his Motion for Compassionate Release. First, he argues his medical conditions warrant release in light of the COVID-19 pandemic.

Second, he argues his sentence enhancement pursuant to 21 U.S.C. § 851 is unlawful.  The Court considers each argument in turn.

a.   COVID-19 Argument

Defendant argues his health conditions—diabetes, hypertension, and high body mass index—"put him in grave danger should he contract COVID-19," presenting extraordinary and compelling circumstances that warrant his release.  Counseled Mot. 3.  The Government concedes that defendant's diabetes diagnosis is an extraordinary and compelling circumstance because it is a COVID-19 risk factor recognized by the Centers for Disease Control and Prevention.[8]  Gov't's Resp. Mot. Compassionate Release 13-14.  The Court also notes that defendant contracted COVID-19 during a significant outbreak of the virus at FCI-Fort Dix.  The Court thus focuses its analysis on the second and third steps of the compassionate release framework—danger to the community under § 3142(g) and the § 3553(a) factors.

Defendant argues he would not pose a danger to the community upon release because "he has demonstrated significant changes in the last nine years" and "reached an age when most offenders, even the most serious and incorrigible, are less dangerous and less likely to recidivate."  Counseled Mot. 11 (internal quotation omitted).  In Response, the Government

---

[8] The Government argues defendant's other health conditions are not extraordinary and compelling because the Centers for Disease Control and Prevention do not recognize them as COVID-19 risk factors.  Gov't's Resp. Mot. Compassionate Release 14 n.4.  Because the Government has conceded that defendant's diabetes satisfies the extraordinary and compelling circumstances requirement, the Court need not consider this issue.

Following defendant's COVID-19 diagnosis and recovery, the Government seemingly attempted to limit its concession that defendant's diabetes presents extraordinary and compelling circumstances because, it argues, defendant now has some immunity to COVID-19.  *See* Gov't's Third Supp. 2 ("We are also hopeful that, even before vaccines are available, Rodriguez and the other inmates who were infected will now enjoy a measure of immunity, as recent scientific reports suggest is likely."); Gov't's Fourth Supp. 5 ("Rodriguez's risk has apparently declined, given that he has already contracted the virus and has recovered.  The government earlier provided considerable authority for the proposition that, in this situation, there is no basis for the extraordinary remedy of reduction of sentence.").  Significantly, the Court notes that there is no scientific consensus on this issue.  *See* Def.'s Third Supp. 3.  Moreover, the Court does not address the issue because it concludes defendant would pose a danger to the community if he were granted compassionate release and the § 3553(a) factors counsel against compassionate release in this case.

argues defendant "continues to present a danger to the community."  Gov't Resp. Mot.

Compassionate Release 15.  Defendant "admitted responsibility for trafficking hundreds of

kilograms of cocaine as part of his significant drug trafficking organization, which he organized

and led."  *Id.*  Further, "[t]his conduct took place over the course of a number of years, when the

defendant was already in his late 40s and early 50s."  *Id.*

      The Court agrees with the Government on this issue.  Defendant's drug trafficking crimes

are serious and dangerous to the wellbeing of society.  *See United States v. Santiago*, No. 15-cr-

280, 2020 WL 4015245, at *4 (E.D. Pa. July 15, 2020) ("[D]efendant pleaded guilty in two

separate actions before this Court for trafficking large quantities of drugs and illegally

purchasing firearms. . . . These crimes are of a serious nature and underscore the danger

defendant poses to the community.").  Defendant operated the drug trafficking organization out

of a building "immediately next to a public middle school and down the street from a public

elementary school" and was convicted of a weapons offense in connection with his drug

offenses.  Gov't Resp. Mot. Compassionate Release 3.  Further, contrary to defendant's

assertion, he did not commit these crimes as an immature young adult; he was in his late 40s.

Accordingly, defendant's suggestion that he has "aged out" of criminal behavior is

unconvincing.  The Court thus concludes that defendant has not shown he would not pose a

danger to the community if he were granted compassionate release.

      Defendant next asserts that compassionate release is consistent with the § 3553(a) factors.

Defendant argues he has accepted responsibility for his crimes by pleading guilty and has

"demonstrated significant rehabilitation efforts" by attending a wide variety of courses offered at

FCI-Fort Dix.  Counseled Motion 11.  In Response, the Government again emphasizes the

seriousness of defendant's crimes and argues that defendant has served less than ten years of his sentence.[9]  Gov't's Resp. Mot. Compassionate Release 15.

The Court agrees with the Government on this issue.  As explained *supra*, defendant committed serious and dangerous crimes.  Given an estimated release date of April 18, 2025, defendant has served only approximately 70% of his sentence.  Although the Court recognizes defendant's rehabilitation efforts through his coursework, defendant has failed to demonstrate that the time he has served reflects the seriousness of the offences, promotes respect for the law, and provides just punishment.  *See United States v. Watson*, No. 07-cr-238, 2021 WL 242478, at *7 (E.D. Pa. Jan. 25, 2021) (concluding the § 3553(a) factors counsel against compassionate release in part because "Defendant has served approximately three-fourths of his total sentence of incarceration; however, the magnitude of his crimes warrant the sentence he received."); *United States v. Young*, 06-cr-710-02, 2020 WL 4925592, at *4 (E.D. Pa. Aug. 21, 2020) (concluding that the § 3553(a) factors weighed against granting compassionate release because of the seriousness of defendant's crimes and the fact that defendant had over 100 months left on his 280-month sentence).  The Court thus concludes the § 3553(a) factors weigh against compassionate release.  Accordingly, defendant's Motion for Compassionate Release is denied to the extent it seeks compassionate release based on the COVID-19 pandemic.

b.  Sentence Argument

Defendant also argues his sentence enhancement pursuant to 21 U.S.C. § 841(b)(1) is unlawful, which presents extraordinary and compelling circumstances justifying his release.  Def.'s Second Supp. 7.  At the time of defendant's conviction, 21 U.S.C. § 841(b)(1) provided a

---

[9] In its Response to defendant's Motion for Compassionate Release, the Government incorrectly states that defendant is serving a term of 168 months' imprisonment.  Gov't's Resp. Mot. Compassionate Release 2.  As the Government correctly states in its Response to defendant's § 2255 Motion, defendant was sentenced to a term of 198 months' imprisonment.  Gov't's Resp. § 2255 Mot. 3.

sentence enhancement for defendants who had a prior conviction for a "felony drug offense." Prior to his federal conviction, defendant was convicted under 35 Pa. Stat. Ann. 780-113(a)(30), which criminalizes manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance or counterfeit controlled substance.  *See* Information Charging Prior Offense ¶ 1.  The Plea Agreement set forth the enhanced statutory maximum and minimum sentences for the nine counts of conviction based on the filing of the Information pursuant to 21 U.S.C. § 851.  Plea Agreement ¶ 5.

Defendant argues that the Pennsylvania statute under which he was convicted is broader than a "felony drug offense" in the federal code because there are drugs that are criminalized under the Pennsylvania statute but not included in the federal definition of "felony drug offense."[10]  According to defendant, the state conviction identified in the § 851 Information should not have been the basis of a § 841(b)(1) enhancement, and as a consequence, the sentence enhancement was unlawfully imposed.

The Court concludes that this argument is improperly raised by motion for compassionate release.  An argument that a sentence was improperly calculated and unlawful must be raised on a habeas motion.  A defendant cannot circumvent the habeas restrictions by labeling his habeas motion as a motion for compassionate release.  *See United States v. Handerhan*, 789 Fed. App'x 924, 926 (3d Cir. 2019) (although the issue of whether such an argument could be the basis of a motion for compassionate release was not on appeal, noting that "§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity. The terms of neither the statute nor its policy statement provide for release on the basis of arguments like

---

[10] Under 21 U.S.C § 802(44), the federal code defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

[defendant's] that were or could have been raised on direct appeal or in a § 2255 motion, let alone for defendants . . . who already have completed a § 2255 proceeding and who are subject to the restrictions on filing second or successive § 2255 motions"); *United States v. Arojojoye*, 806 Fed. App'x 475, 475 (7th Cir. 2020) (denying defendant's motion for compassionate release because it "expressly sought a modification of his prison sentence based on his argument that the disparity between his sentence and his co-defendant's was unwarranted" and "any post-judgment motion in a criminal proceeding that fits the description of a motion to vacate, set aside, or correct a sentence set forth in the first paragraph of section 2255" must be raised via a § 2255 motion); *Hansen v Rios*, 19-cv-374 2019 WL 4307129, at *3 (D. Minn. July 19, 2019) ("A request for relief under 18 U.S.C. § 3852(c) does not relate to the fact or duration of the sentence."). Accordingly, the Court denies defendant's Motion for Compassionate Release to the extent it seeks release based on defendant's sentence enhancement under 21 U.S.C. § 841(b)(1). Because that argument is more properly raised in connection with defendant's § 2255 Motion, the Court considers it in the discussion of that Motion, *infra*.

**B.  § 2255 Motion**

 *i.    Applicable Law*

A defendant in federal custody may file a § 2255 motion to vacate, set aside, or correct a sentence within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).[11]  However, a

---

[11] A defendant may also file a § 2255 motion within one year of the "date on which the judgment of conviction becomes final"; "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"; or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f).

motion under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal.  *Gov't of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985).  Accordingly, claims that could have been, but were not, raised on direct appeal, are procedurally defaulted and generally may not be raised in collateral proceedings under § 2255.  *United States v. Frady*, 456 U.S. 152, 164–65 (1982); *United States v. Essig*, 10 F.3d 968, 978–79 (3d Cir. 1993).

Procedural default may be excused if a defendant can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.  *Frady*, 456 U.S. at 168; *cf. Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A defendant may demonstrate cause where the defaulted issue was "so novel that its legal basis [was] not reasonably available" at the time of default.  *Reed v. Ross*, 468 U.S. 1, 15 (1984).  A claim is "not reasonably available" when the Supreme Court "explicitly overrule[s] one of its precedents" or "overturn[s] a longstanding and widespread practice to which [the] Court ha[d] not yet spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved."  *Id.* at 17.  However, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  A defendant may establish prejudice by showing that the alleged error worked to the defendant's "actual and substantial disadvantage."  *Frady*, 456 U.S. at 170.  In the context of a guilty plea, a defendant "must show that there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have instead insisted on going to trial."  *Hill v. Lockhart*, 475 U.S. 52, 59 (1985).

To show a fundamental miscarriage of justice, a defendant must present new evidence that he is actually innocent of the crime for which he has been convicted.  *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002).  To establish actual innocence, the defendant must show that

"it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

ii.    *Analysis*

Defendant argues his conviction under 18 U.S.C. § 922(g)(1) must be vacated for four reasons.  First, he argues that his guilty plea was not knowing, voluntary, and intelligent because it did not contain an admission that he knew he was a member of a class of persons prohibited from possessing a firearm, as is required following the *Rehaif* decision.  Def.'s § 2255 Mot. 4. Second, he argues that, he "did not knowingly acknowledge that it was illegal for him to possess a firearm," as he alleges is required by *Rehaif*.  Def.'s § 2255 Mot. 5.  Third, he argues that § 922(g) is *per se* unconstitutional as a violation of his Second Amendment rights.  Def.'s § 2255 Mot. 7.  Fourth, defendant argues his sentence enhancement pursuant to 21 U.S.C. § 841(b)(1) is unlawful because it is based on a violation of a state statute that is broader than a federal "felony drug offense."[12]  Def.'s Second Supp. 7.  The Court addresses defendant's arguments based on *Rehaif* together and his Second Amendment and sentence enhancement arguments separately.

a.   *Rehaif* Argument

As a preliminary matter, defendant's § 2255 Motion was timely filed with respect to his arguments based on *Rehaif*.  Because the pending Motion was filed on June 22, 2020, within one year of the *Rehaif* decision, the Motion is timely if *Rehaif* is recognized as a new right that is retroactively applicable to cases on collateral review.[13]  In its Response, the Government concedes that *Rehaif* recognized a new right and applies retroactively to defendant's § 2255

---

[12] Although defendant did not raise this argument in his § 2255 Motion, he improperly raised it in his Motion for Compassionate Release.  The Court consider the argument as if defendant raised it in his § 2255 Motion.  *See* Section (III)(A)(ii)(b), *supra*.

[13] *Rehaif* was decided on June 21, 2019.  Because June 21, 2020 was a Sunday, "the limitations period extended to the next day that was not a Saturday, Sunday, or legal holiday." *Pennington v. Tice*, 365 F. Supp. 3d 579 (E.D. Pa. 2019); *see also* Fed. R. Civ. P. 6(a)(1)(c); *Wilson v. Beard*, 426 F.3d 653, 662-63 (3d Cir. 2005) (holding the Federal Rules of Civil Procedure timing rules apply to federal habeas petitions and the one-year limitations period).

Motion.  Gov't's Resp. § 2255 Mot. 4 ("Rodriguez permissibly pursues the issue under Section 2255, which allows relief where a court decision changing the law after the conviction makes clear that the 'conviction and punishment were for an act that the law does not make criminal.' *Davis v. United States*, 417 U.S. 333, 346 (1974).").[14]

The Court first considers defendant's second argument, that his guilty plea is unlawful because he "did not knowingly acknowledge that it was illegal for him to possess a firearm." Def.'s § 2255 Mot. 5.  In its Response, the Government argues that defendant's interpretation of *Rehaif* is legally incorrect because *Rehaif* "does not require proof that the defendant knew that his firearm possession was illegal."  Gov't's Resp. § 2255 Mot. 4.  The Court agrees with the Government on this issue.  Proof that the defendant knew it was unlawful for him to possess a firearm is not an element of § 922(g).  *See Rehaif*, 139 S. Ct. at 2195.  Accordingly, defendant's § 2255 Motion is denied to the extent it seeks relief based on this argument.

The Court next considers defendant's first argument, that his guilty plea was not made knowingly, voluntarily, and intelligently because it did not contain an admission that he knew he was in a class of persons which was prohibited from possessing a firearm.  Defendant did not raise this argument on appeal, and so it is procedurally defaulted.  As such, he must show either cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default.

Defendant alleges he did not raise this issue in his direct appeal because "[a]t the time of his plea and sentencing, circuit precedent was well established that the Government need only

---

[14] The Court observes there is a "growing dispute among district courts concerning whether *Rehaif* is in fact retroactive."  *United States v. Roberts*, No. 15-cr-387, 2020 WL 6700918 (E.D. Pa. Nov. 13, 2020).  However, the Court need not answer the question of retroactivity in this case.  The Government concedes that *Rehaif* applies retroactively to defendant's Motion.  Gov't's Resp. § 2255 Mot. 4.  Retroactivity is not jurisdictional and is, therefore, waivable.  *United States v. Bendolph*, 409 F. 3d 155, 164 (3d Cir. 2005).

prove that the defendant possessed a firearm."[15]  Def.'s § 2255 Mot. 7.  However, regardless of whether the argument was available to defendant, he has not shown prejudice attributed to the procedural default.  Defendant has not argued, nor could he reasonably argue, that "there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have instead insisted on going to trial."  *Hill*, 475 at 59.  At the time of this offense, defendant had been convicted of two offenses that were punishable by terms of imprisonment exceeding one year and, in fact, was sentenced to four to eight years on one conviction and six to twenty-five months on the other.  PSR ¶¶ 65-66.  This means that defendant was told twice that he had been convicted of a crime punishable by a term of imprisonment exceeding one year.  He served almost four years in prison on those convictions.  PSR ¶ 66.  Thus, there is no reasonable probability that defendant would not have pled guilty and instead would have insisted on proceeding to trial in order to require that the Government prove this element.  *See Roberts*, 2020 WL 6700918 ("Given [defendant's] prior felony convictions, and given the fact that he had spent well over a year in prison prior to his June 2015 arrest, it is implausible that [defendant] was unaware at the time of his offense that he had been convicted of a crime punishable by imprisonment of over a year, or that the Government would have been unable to prove this fact beyond a reasonable doubt."); *Saunders*, 2020 WL 5569785, at *4 ("There can be no doubt that

---

[15] In its Response, the Government argues that defendant is unable to establish cause for the procedural default because his argument was available and, in fact, "was thoroughly and repeatedly litigated in the courts of appeals over the last three decades."  Gov't Resp. § 2255 Mot. 6.  Although the Court notes that "[t]he issue had been litigated in a number of circuit courts for decades," *United States v. Saunders*, No. 10-cr-442, 2020 WL 5569785, at *4 (E.D. Pa. Sept. 17, 2020), cause for procedural default exists if the argument would be contrary to "a longstanding and widespread practice to which [the] Court ha[d] not yet spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved."  *Reed*, 468 U.S. 1 at 17.  Justice Alito wrote in his dissent in *Rehaif* that the decision "overturn[ed] the long-established" and "universal" interpretation of § 922(g) that had "been adopted by every single Court of Appeals to address the question" and "used in thousands of cases for more than 30 years."  *Rehaif*, 139 S. Ct. at 2201-02 (Alito, J. dissenting).  Whether cause for the default exists presents "a close question" that ultimately the Court need not answer in this case.  *Roberts*, 2020 WL 6700918, at *4.  Even if defendant is able to establish cause, he cannot establish prejudice resulting from the procedural default.

[defendant] knew of his conviction of a crime punishable by a term of imprisonment exceeding one year as he had served a term of imprisonment in excess of that amount of time.").

The Government also argues that the sentence on defendant's § 922(g)(1) conviction did not affect the total length of defendant's sentence because it was imposed to run "entirely concurrent" with a longer sentence on seven counts.  Gov't's Resp. § 2255 Mot. 3.  The Court agrees with the Government on this issue.  Defendant was sentenced to 150 months' imprisonment on Count Five, which was imposed to run concurrently with his concurrent sentences of 168 months on Counts One, Two, Three, Six, Seven, Eight, and Nine.  *Id.* Accordingly, any reduction of defendant's sentence on Count Five would not reduce the total length of his sentence, and so there is no reasonable probability that, but for the claimed error, defendant "would not have pleaded guilty and would have instead insisted on going to trial." *Hill*, 475 U.S. at 59.  Accordingly, the Court concludes defendant is unable to establish prejudice for the procedural default.

Because defendant has not shown prejudice, his procedural default may be excused only by a fundamental miscarriage of justice.  Defendant does not argue that he is actually innocent of the crime charged, nor could he reasonably do so.  Any attempt to show actual innocence would fail for the same reason that defendant is unable to show prejudice: he was convicted of two offenses that were punishable by terms of imprisonment exceeding one year, was sentenced to four to eight years on one conviction and six to twenty-five months on the other, and served approximately four years in prison.  As such, defendant cannot show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327; s*ee also Saunders*, 2020 WL 5569785, at *5 ("No reasonable juror would ever find that [defendant] did not know that he had spent over two years in prison before he possessed

18

a firearm."). Accordingly, the Court concludes that defendant has failed to prove that his conviction on Count Five constitutes a fundamental miscarriage of justice.

That part of defendant's § 2255 Motion in which he claims his guilty plea was not made knowingly, voluntarily, and intelligently in light of *Rehaif* is dismissed.

### b.  Second Amendment and Sentence Enhancement Arguments

Defendant's Second Amendment challenge to § 922(g) and challenge to his sentence enhancement under 21 U.S.C. § 841(b)(1) were not timely raised.  Section 2255(f)(3), which allows defendant to raise his *Rehaif* arguments within one year of the *Rehaif* decision, applies only to arguments in his § 2255 Motion that assert the newly recognized right.  28 U.S.C. § 2255(f)(3).  Because these arguments are independent of the right recognized in *Rehaif*, the extended time to file a § 2255 motion set forth in § 2255(f)(3) does not apply to them. Defendant does not argue that governmental action created an impediment to his ability to raise the Second Amendment and sentence enhancement claims or that facts supporting these arguments were not previously available.  That means the alternative ways of calculating the statute of limitations in 28 U.S.C. § 2255(f)(2) and (4) do not apply.  Accordingly, defendant's Second Amendment and sentence enhancement arguments are subject to the one-year statute of limitations that began to run on the date on which defendant's conviction became final and are barred.  *See* 28 U.S.C. § 2255(f)(1).

Defendant was sentenced on November 24, 2014.  He did not file a direct appeal of his conviction or sentence within fourteen days, as provided by Federal Rule of Appellate Procedure 4(b)(1)(A)(i).  His conviction thus became final on December 8, 2014, the date on which the time to file an appeal expired.  *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction

and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.").

Because the § 2255 Motion was filed on June 22, 2020, over five years later, it is untimely. Therefore, to the extent defendant's § 2255 Motion seeks relief on the ground that § 922(g)(1) is unconstitutional, the Motion is dismissed.[16]  Similarly, defendant filed the Second Supplement to his Motion for Compassionate release, raising the sentence enhancement argument, on November 6, 2020.  For that reason, the Court denies defendant's request for relief based on the argument that his sentence enhancement pursuant to 21 U.S.C. § 841(b)(1) is unlawful.

### iii.    Certificate of Appealability

In the Third Circuit, a certificate of appealability is granted only if defendant makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights." *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir.1999); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.").  The Court concludes that defendant has not made such a showing.  Thus, the Court will not issue a certificate of appealability.

## IV.    CONCLUSION

Defendant's Motion for Compassionate Release is denied. The denial is based on the failure of defendant to establish that he would not pose a danger to the community upon his release and that the § 3553(a) factors counsel in favor of release.

---

[16] The Court also notes that the Third Circuit has rejected defendant's Second Amendment argument and upheld the constitutionality of § 922(g).  *Binderup v. Attorney Gen. United States*, 836 F.3d 336, 345 (3d Cir. 2016).

Defendant's *Pro Se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is dismissed and denied to the extent defendant seeks relief based on *Rehaif*.  The § 2255 Motion is dismissed as untimely to the extent defendant seeks relief based on his Second Amendment claim.  The sentencing enhancement claim, treated by the Court as raised in the § 2255 Motion, is dismissed as untimely.

An appropriate order follows.